**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **IN RE: MARQUETTE TRANSPORATION GULF-INLAND, LLC, AS OWNER PRO HAC VICE OF THE M/V ST. THOMAS, OFICIAL NO. 1050938, FOR EXONERATION FROM OR LIMITATION OF LIABILITY** | **CIVIL ACTION**<br><br>**NO. 14-1961**<br><br>**SECTION "B"(5)** |

**ORDER AND REASONS**

## I. NATURE OF MOTION AND RELIEF SOUGHT

Before the Court is Limitation Plaintiff's, Marquette Transportation Gulf-Inland, LLC, "Motion for Summary Judgment" (Rec. Doc. 12), which seeks dismissal of the claims asserted by Claimant-in-Limitation, Iberville Parish Council, under the doctrine of *Robins Dry Dock* and related progeny. The Parish opposes the motion (Rec. Doc. 14), Marquette has replied (Rec. Doc. 18), and the Parish has filed a sur-reply (Rec. Doc. 27). For the reasons that follow, **IT IS ORDERED THAT** Marquette's Motion is **DENIED.**

## II. FACTS AND PROCEDURAL HISTORY

Marquette brings this action under the Limitation of Liability Act, 46 U.S.C. § 30501, *et seq.*, as owner *pro hac vice* of the M/V ST. THOMAS, arising out of an allision between that vessel and the Gross Tete Bridge (the "Bridge"), which occurred on February 28, 2014. (Rec. Doc. 12-1 at 1). The Bridge carries

traffic on Louisiana Highway 77 across the Intracoastal Waterway in Iberville Parish, Louisiana, and was at all relevant times owned and operated solely by the Louisiana Department of Transportation and Development ("DOTD"), a political subdivision of the State. (Rec. Doc. 12-1 at 2, Rec. Doc. 14 at 1). The Bridge sustained damage in the allision, necessitating its closure for repairs for approximately 80 days. (Rec. Doc. 14 at 2). The closure imposed significant detours on Iberville Parish residents for purposes of commuting, grocery shopping, and engaging in other daily activities. *Id.* In an effort to alleviate the inconvenience presented by the Bridge's closure, the State, through DOTD, entered into a "cooperative endeavor/joint venture" with the Parish and the State's Department of Wildlife and Fisheries ("DWLF") "to provide an alternative means of efficient, safe, and adequate transportation to the residents of Iberville Parish and the State of Louisiana," in the form of a ferry across the Intracoastal Waterway. (Rec. Doc. 14 at 2)

Because DOTD did not have ferry boats readily available at the time, nor the resources to immediately acquire land necessary for ferry operations, the agreement called for the State to furnish a state-owned and DWLF-operated passenger ferry to the Parish as an alternative means of transportation. (Rec. Doc. 14 at 2). The Parish, for its part, was to "construct,

maintain, staff, and obtain a site for temporary ferry landings on both sides of the Intracoastal Waterway." (Rec. Doc. 14 at 2). The Parish agreed and performed under the agreement. (Rec. Doc. 27-1). Thereafter, when Marquette initiated the instant limitation proceedings, the Parish submitted a claim for reimbursement of the expenses incurred in performing under its agreement with the State.

**III. CONTENTIONS OF MOVANT**

Marquette seeks to have the Parish's claims dismissed, alleging that the doctrine established in *Robins Dry Dock* prohibits recovery in an action premised on maritime negligence by a party who did not incur physical damage to an item in which it held a proprietary interest.[1] Because the Fifth Circuit has squarely endorsed the *Robins Dry Dock* doctrine and because there is no dispute that the Parish did not at any time have an ownership interest in the Bridge, Marquette claims the Parish may not seek to recover the expenses incurred in connection with acquiring and maintaining the ferry landing properties. To the extent the Parish's claim is premised on the assertion of a theory of equitable subrogation, Marquette argues the Parish has not established the elements of equitable subrogation here.

**IV. CONTENTIONS OF OPPONENTS**

[1] *Robins Dry Dock v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927).

The Parish argues that while the *Robins Dry Dock* doctrine is followed in the Fifth Circuit, an exception exists whereby the party asserting a claim for liability arising out of physical damage to property may transfer some portion of that claim to a third party for recovery. The Parish argues the animating principle of *Robins Dry Dock* is a concern with the possibility of unlimited and/or duplicative recovery stemming from remote damages incurred in the wake of maritime torts. These concerns, it argues, are not present here and the Parish should be entitled to recover its expenses incurred in connection with performance under its agreement with the State, which operates in the manner of an equitable subrogation under cases such as *Amoco Transp. Co. v. S/S Mason Lykes*, 768 F.2d 659 (5th Cir. 1985).

**V. SUMMARY JUDGMENT STANDARD**

Summary judgment is proper if the pleadings, depositions, interrogatory answers, and admissions, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). A genuine issue exists if the evidence would allow a reasonable jury to return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Although the Court must consider the evidence

with all reasonable inferences in the light most favorable to the nonmoving party, the nonmovant must produce specific facts to demonstrate that a genuine issue exists for trial. *Webb v. Cardiothoracic Surgery Assocs. of N. Texas*, 139 F.3d 532, 536 (5th Cir. 1998). The moving party bears the initial responsibility of informing the district court of the basis for its motion. *Celotex*, 477 U.S. at 323. The movant must point to "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* (citing Fed. R. Civ. P. 56). If and when the movant carries this burden, the nonmovant must then go beyond the pleadings and use affidavits, depositions, interrogatory responses, admissions, or other evidence to establish a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[W]here the non-movant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial. . . . Only when 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party' is a full trial on the merits warranted." *Lindsey v. Sears Roebuck and Co.*, 16 F.3d 616 (5th Cir. 1994). Accordingly,

conclusory rebuttals of the pleadings are insufficient to avoid summary judgment. *Travelers Ins. Co. v. Liljeberg Enter., Inc*., 7 F.3d 1203, 1207 (5th Cir. 1993).

**VI. DISCUSSION**

In *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 48 S.Ct. 134, 72 L.Ed. 290 (1927), the United States Supreme Court denied the claims of time charterers seeking recovery of damages in the form of lost expected profits incurred when the time-chartered vessel was delayed due to damage caused by the negligence of the operator of a dry dock. That decision has been interpreted by the Fifth Circuit to establish a strict rule that "claims for economic loss unaccompanied by physical damage to a proprietary interest [are] not recoverable in maritime tort." *State of La. ex rel. Guste v. M/V TESTBANK*, 752 F.2d 1019 (5th Cir. 1985)(en banc). In *TESTBANK*, the en banc Fifth Circuit emphatically re-affirmed the *Robins Dry Dock* doctrine, engaging in a lengthy discussion of the policies and normative principles animating the rule and rejecting arguments against its application to conclude:

> [H]aving reexamined the history and central purpose of the doctrine of *Robins Dry Dock* as developed in this circuit, we remain committed to its teaching. Denying recovery for pure economic losses is a pragmatic limitation on the doctrine of foreseeability, a limitation we find to be both workable and useful.

752 F.2d at 1032. The Fifth Circuit later re-affirmed its commitment to the *Robins Dry Dock* rule in *In re Taira Lynn Maritime Ltd. No. 5, LLC*, stating: “It is unmistakable that the law of this circuit does not allow recovery of purely economic claims absent physical injury to a proprietary interest in a maritime negligence suit.” 444 F.3d 371, 377 (5th Cir. 2006). The *Taira Lynn* court proceeded to reject an argument advanced in favor of recognizing a geographic exception to the *Robins Dry Dock/TESTBANK* rule, and further gave a very narrow reading to the physical damage requirement of that rule. *Id.* at 380 (spoiled seafood cargo and terminated manufacturing runs that resulted when electricity was shut off for evacuation purposes following allision did not satisfy the physical damage component of the *TESTBANK* rule).

The foregoing makes it abundantly clear that the Parish has no claim in its own right for costs and expenses associated with the acquisition and operation of the ferry landings whose development was precipitated by the closure of the Bridge. There is no dispute that the Parish has no proprietary interest in the Bridge and that the Parish suffered no physical damage to any other property it owned. Accordingly, the only issues before the Court are: (1) whether the *Robins Dry Dock/TESTBANK* rule recognizes an exception, such as the one asserted here by the Parish, with respect to a real party in interest’s ability to

shift some of its own injury by contract to a third party, and (2) if so, whether the Parish's claims fit within that exception.

In support of its argument here, the Parish relies on *Amoco Transp. Co. v. S/S Mason Lykes*, 768 F.2d 659 (5th Cir. 1985). That case involved a collision between two vessels, one carrying a partial load of cargo, which resulted in damage to both vessels. *Id.* at 661. Although the cargo was put in jeopardy by the collision, it was not damaged. *Id.* at 661-62. Damage to the carrying vessel and anticipated repair delays, however, prompted the carrying vessel's owner to discharge the cargo at port in order for it to be loaded onto another vessel and transported to its final destination. *Id.* Because of a "freight earned clause" in the bills of lading, the cargo owners were charged the full freight for the original aborted voyage and a second full freight charge to secure shipment of the cargo to its final destination. *Id.* The cargo owners then filed suit against both vessels/their owners seeking recovery of the additional freight charge. *Id.* at 662. Relying on *Robins Dry Dock*, the district court denied the cargo owners' claims, considering freight losses to be purely economic losses without any attendant physical damage to a proprietary interest (because the cargo owners had no ownership interest in the damaged vessel). *Amoco Transp. Co.*, 768 F.2d at 666. Finding *Robins Dry Dock* and

*TESTBANK* inapposite, the Fifth Circuit reversed, concluding that the cargo owners could recover from the vessel on two bases. *Id.* at 668. First, the Court found the owner of the damaged vessel and the cargo owners were engaged in a common venture which sustained physical injury as a result of the collision, and that the cargo owners' lost freight charges constituted damages flowing directly from the collision for which the negligent non-carrying vessel would have been liable even in the absence of a freight earned clause. 768 F.2d at 667-68. This reasoning relied on traditional maritime principles recognizing the existence of a common venture between cargo and vessel owners. *Id.* at 668. Second, and alternatively, the Court noted that in the absence of a freight earned clause in the bills of lading, the carrying vessel would not have the right to retain the freight, explaining:

> When a collision causes a vessel to lose freight by preventing delivery of the cargo to its final destination, the cargo-carrying vessel can recover the lost freight from the negligent non-carrying vessel. . . . Thus the loss of the original freight for the voyage would be an economic loss of the owner of the damaged vessel. ***Robins Dry Dock*** **does not prevent recovery for such economic losses by the owner of the physically damaged vessel.** *See Vicksburg Towing Co. v. Mississippi Marine Tranport Co.*, 609 F.2d 176 (5th Cir. 1980); *State of Louisiana ex rel Guste v. M/V TESTBANK*; *Venore Transportation Co. v. M/V STRUMA*, 583 F.2d 708 (4th Cir. 1978). **Nor does *Robins Dry Dock* prevent recovery for such losses by a**

> **person to whom they have been contractually shifted.** *Standard Navigazione v. K.Z. Michalos*, 1981 A.M.S. 748 (S.D. Tex. 1981); *Venore Transportation Co. v. M/V STRUMA.* **Nothing in the *Robins Dry Dock* or the *TESTBANK* holding or rationale prohibits recovery in tort by the person to whom the economic losses suffered by the owner of the physically damaged property have been shifted.** The effect of a freight earned clause is similar to the effect of a clause providing that charter hire continues to run while a vessel is disabled; it contractually shifts the risk of economic loss, which would normally fall upon the property owner, to a third party. That third party is entitled to recover those losses. **The risk of double recovery from the tortfeasor is not extant.** *STRUMA*.

*Amoco Transp. Co.*, 768 F.2d at 668 (emphasis added).

In light of the above, it is settled that where the loss sought to be recovered by a third party is actually an economic loss otherwise recoverable by the real party in interest (*i.e.*, the party that sustained physical damage to a proprietary interest), which loss has been shifted by way of agreement to the third party, it is properly recoverable by that party notwithstanding the *Robins Dry Dock* doctrine. Here, the Parish argues (and Marquette fails to rebut) that the economic loss incurred in connection with the ferry operations is a loss that would be properly recoverable by the State arising out the physical injury to state-owned property, *viz.* the Bridge. Because the State entered into a cooperative agreement whereby the Parish would incur expenses in connection with the ferry

operations, the Parish argues the State merely shifted that loss to it, which loss remains recoverable in line with *Amoco*'s reasoning and in light of the fact that no risk of double-recovery exists. Accordingly, unless there is some valid basis for distinguishing *Amoco*, Marquette's summary judgment motion must be denied. Toward that end, Marquette argues that the facts of *Amoco*, which involved a collision between two vessels and relied on "venerable" and "firmly established" maritime principles that recognize that vessel and cargo owners are bound together in a common venture arising out of the Jason Clause contained in a bill of lading, render that case inapplicable here. In this effort, Marquette completely ignores the second rationale offered by the Fifth Circuit in *Amoco*; namely, that nothing about the *Robins Dry Dock/TESTBANK* rule prevents the real party in interest from shifting the right to recover some of its properly recoverable economic loss to a third party.

Marquette seeks to rely on *Norwegian Bulk Transport A/S v. Int'l Marine Terminals P'ship.*, 520 F.3d 409 (5th Cir. 2008) as a basis for limiting the reach of the so-called *Amoco* exception. In that case, the Fifth Circuit adopted *in extenso* the Order and Reasons issued by the district court in denying recovery to a time charterer that filed a claim for damages arising out of the delay of a vessel for repairs occasioned by damage caused by a dry dock operator. 520 F.3d at 412-14. In the original opinion,

then-Judge Vance rejected the claimant's arguments that the *Amoco* exception applied, noting that the Fifth Circuit had not endorsed its application beyond the context of a collision between two vessels not in privity of contract. Further, Judge Vance noted that the facts of the case put it squarely within the parameters of the *Robins Dry Dock* holding. These rationales do not apply with equal force in the instant case.

As a preliminary matter, it is necessary to precisely distinguish the contours of the argument advanced under *Amoco* here. This requires consideration of a distinction between what might most accurately be termed the "*Amoco* exception" and the "*Amoco* exclusion." Both of these find their footings in the two rationales provided in that opinion for allowing recovery. Under the former, the Fifth Circuit effectively recognized an exception to the *Robins Dry Dock* rule in the case of a collision between two vessels not in privity of contract, allowing a cargo owner to recover damages from a negligent vessel when that vessel causes damage to the carrying vessel, to which the cargo owner is considered bound in a common venture. The court did so in reliance on traditional maritime principles and it is properly viewed as an exception because the *Robins Dry Dock* rule would otherwise apply directly under those circumstances. Under the latter rationale, however, the Court simply recognized the inapplicability of *Robins Dry Dock* (or perhaps more accurately

the lack of proscription in *Robins Dry Dock* to allowing recovery) in situations where the loss sought to be recovered is a loss properly recoverable by the real party in interest, the right to recovery having merely been shifted to a third party. Under such circumstances there is no risk of double recovery, there is no risk of extending foreseeable damages *ad infinitum*, put simply: such a case "is not within the parameters of the evil to be remedied" by *Robins Dry Dock*. *Amoco*, 768 F.2d at 669.

Viewed in the light above, the holding of *Norwegian Bulk Transport* is perfectly consistent with the position taken by the Parish herein. It remains accurate that the Fifth Circuit has not endorsed application of the *Amoco* exception beyond the collision context. Further, the facts of *Norwegian Bulk Transport* put the case squarely within the contours of the *Robins Dry Dock* rule. In that case, a time charterer sought to recover – in its own right – economic losses incurred as a result of physical damage occasioned by a vessel belonging to a third party. 520 F.3d at 410. There was no room for argument pertaining to application of the exclusion. Thus, without application of the exception, the case remained governed by the *Robins Dry Dock/TESTBANK* doctrine.

Under the present facts, however, absent any argument or evidence that the damages presently sought to be recovered by the Parish are not properly recoverable economic losses by the

State, or that there was some legal deficiency in the means employed for shifting the right to recover those losses to the Parish, *Robins Dry Dock* does not apply – this exclusion was expressly recognized in *Amoco*, but it would remain no less the correct legal result here had that case never been decided or had it limited itself to discussion of the exception, *supra.*

Finally, Marquette's reliance on Judge Duval's opinion denying recovery in *In re Bertucci Contracting, LLC*, No. 11-1328, 2013 WL 100645 (E.D. La. Jan. 7, 2013) is misplaced. Although the facts of that case are facially similar to those presently at issue, to the extent they involve an allision that damaged a state-owned bridge, a closer look reveals the legal conclusion reached there to be inapposite. The parties in *Bertucci* argued under theories of quasi-contract and unjust enrichment that the cost of various emergency services and ferry operations ought to be recoverable in limitation proceedings arising out of the subject allision. Unlike the present case, there was no evidence that any of these entities had entered into a contract with the real party in interest to provide the services at issue. Accordingly, the right of recovery was asserted by the claimants in their own capacities and the case fell within the scope of *Robins Dry Dock*, while failing to meet the requirements of the *Amoco* exception. Such facts are distinguishable from those presently at bar.

**VII. CONCLUSION**

In light of the above, Marquette has failed to establish its entitlement to judgment as a matter of law and its summary judgment motion must be denied. It remains possible that the facts at trial will reveal that the losses sought to be recovered by the Parish would not have been properly recoverable by the State or that the contract between the two parties did not effectively shift the right to recover those losses to the Parish. Such positions have not been argued or supported by the evidence presently before the Court. Accordingly,

**IT IS ORDERED THAT** Marquette's Motion for Summary Judgment (Rec. Doc. 12) is **DENIED.**

New Orleans, Louisiana, this 14th day of May, 2015.

UNITED STATES DISTRICT JUDGE